IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TYLER GORDON FERRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-607-SLP |
| | ) | |
| EZPAWN OKLAHOMA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# **O R D E R**

Before the Court are two motions. First, after Plaintiff filed an Amended Complaint[1] [Doc. No. 12] while proceeding pro se, Defendant filed its Second Partial Motion to Dismiss [Doc. No. 14]. Plaintiff did not file a response to Defendant's motion, and the Court may not summarily deem Defendant's motion confessed under Local Civil Rule 7.1(g). *See Issa v. Comp USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003). Instead, the Court has "examine[d] the allegations in [Plaintiff's Amended Complaint and his proposed Second Amended Complaint] and determine[d] whether [he] has stated a claim upon which relief can be granted" based on Defendant's brief. *Id.* at 1178. Defendant's dismissal motion [Doc. No. 14] is at issue due to Plaintiff's failure to respond to it.

Second, and instead of responding to Defendant's motion, Plaintiff filed an Opposed Motion for Leave to Amend Second Amended Petition [Doc. No. 24]—more than two

---

[1] Plaintiff captioned his filing as "Amended Petition." Because it was filed in this Court post-removal, not in state court, the Court uses its proper title: Amended Complaint. The Court treats Plaintiff's proposed "Second Amended Petition," referred to herein as his proposed Second Amended Complaint, in the same manner.

months after Plaintiff's deadline to file a response to Defendant's motion and by which point Plaintiff had obtained counsel to represent him in this matter. In his motion, Plaintiff seeks permission to amend his complaint for a second time pursuant to Federal Rule of Civil Procedure 15(a)(2). Plaintiff's motion does not cite any case law, and it consists of a single paragraph. Defendant filed a response brief, and Plaintiff did not file a reply. *See* Def.'s Resp., Doc. No. 25. Plaintiff's amendment motion [Doc. No. 24] is at issue because Defendant filed a timely response to it.

## I.  Standards of decision

Rule 12(b)(6) applies to Defendant's motion. In considering a motion to dismiss, a court must determine whether the plaintiff has stated claims upon which relief may be granted. Under Rule 8(a)(2), a pleading is to contain "a short and plain statement of [each] claim showing that the pleader is entitled to relief." While Rule 8(a)(2) "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As such, "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. In essence, a plaintiff must "nudge[] [his] claims across the line from conceivable to plausible" in order to survive a motion for dismissal. *Id*. at 570.

To assess the sufficiency of claims made by a plaintiff, a two-pronged approach is deployed. First, "a judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." *Twombly*, 550 U.S. at 572 (quotation marks and citation omitted). A court need not, however, accept the veracity of

"mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, in light of the well-pleaded factual allegations, the court must determine whether "a complaint states . . . plausible claim[s] for relief." *Id.* at 679.

Rule 15(a)(2) applies to Plaintiff's motion. "While Rule 15 provides that leave to amend a complaint shall be freely given when justice so requires, a district court may refuse to allow amendment if it would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (quotation marks and citations omitted). In addition, leave to amend is properly denied if the nonmoving party shows the existence of "undue delay [on the part of the movant], bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or, as already stated,] futility." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). Still, "[t]he purpose of [Rule 15] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotation marks and citation omitted).

## II. Factual allegations[2]

Plaintiff was employed by Defendant from August 2015 through his termination in February 2017. At the time of his termination, he was a thirty-four-year-old male with a disability rating (due to his status as a military veteran) of ninety percent. Plaintiff asserts that his hiring constituted "a contract, a constructive contract or a quasi contract" between him and Defendant which included "key vested term[s] and covenant[s]" of Plaintiff not being required to work on Sundays, Plaintiff being "allowed time [off] from work to attend necessary follow up medical [appointments] and Veterans' Administration services," and "that [Plaintiff] would not be asked to violate, condone, support or to remain silent of any violation of any law, regulation, public policy or [to] do anything unethical or immoral." Second Am. Compl. ¶ 30, Doc. No. 24-1. Plaintiff does not allege that he was a member of the military during any portion of his employment by Defendant.

Plaintiff filed a Charge of Discrimination [Doc. No. 14-1] with the U.S. Equal Employment Opportunity Commission, and he was subsequently issued a Notice of Right to Sue.[3] In the EEOC charge, Plaintiff checked boxes for religion, disability, and retaliation

---

[2] The factual summary herein is taken from Plaintiff's proposed Second Amended Complaint and accepted as true for purposes of deciding the instant motions. *See Iqbal*, 556 U.S. at 678. The factual assertions made in Plaintiff's Amended Complaint [Doc. No. 12] are the same (though fewer) as those included in his proposed Second Amended Complaint [Doc. No. 24-1].

[3] Plaintiff's EEOC filing was not included as part of his proposed Second Amended Complaint (or his two prior pleadings). However, it was submitted to the Court by Defendant, it is referred to at length in Plaintiff's pleadings, and the authenticity of the copy submitted by Defendant has not been challenged by Plaintiff. Accordingly, the Court may consider it in ruling on the instant motions without converting either into a Rule 56 motion. *See Warrior v. Hope Cmty. Servs., Inc.*, No. CIV-17-630-R, 2017 WL 4158658, at *2 (W.D. Okla. Sept. 19, 2017) (citing *GFF Corp. v. Associated Wholesale Grocers,*

4

discrimination. He did not select additional options for discrimination based on, among other options, race, color, sex, national origin, or age. Plaintiff alleged in his EEOC filing that Defendant's management, at the time of Plaintiff's hiring, had agreed to accommodate his periodic absences due to medical appointments necessitated by his disability and episodic impairments caused by his disability, as well as his refusal to work on Sundays because of his religious beliefs. Plaintiff further asserted that a new store manager—as of a bit more than a year after he was hired—harassed him when he sought time off due to his disability or religious beliefs, humiliated him in front of customers and co-workers by discussing his disability and his medical information openly, and complained about his requests to not be slated for work on Sundays. After Plaintiff reported the store manager's conduct to a district manager and to the human resources department, both the store manager and district manager retaliated against Plaintiff by denying his request for a 10-day vacation despite such a vacation having been recently granted to another employee. Plaintiff was subsequently demoted by the district manager and, when he returned from a seven-day vacation, found that he was not on the work schedule. Upon raising the issue with the store manager, Plaintiff was allowed to work for two days, but he was fired near the end of the second day. Plaintiff indicates that he was told his demotion was because another employee had been hired to replace him, and that he was told his termination was

---

*Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). Plaintiff alleges that he filed his discrimination charge before his termination (*see* Second Am. Compl. ¶¶ 7, 10, Doc. No. 24-1), while Defendant maintains he filed it after his termination (*see* Def.'s Resp. 11, Doc. No. 25). This factual dispute is not determinative of any of the issues addressed herein, and the Court does not (and, indeed, cannot) reach it.

due to labor costs. Plaintiff's EEOC filing does not reference his gender, his race or national origin, or his age (except to indicate he had the most seniority at his store, which is not necessarily indicative of age).

Plaintiff now asserts claims for (i) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 ("Title VII"), (ii) reverse age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), (iii) discrimination because of a physical impairment in violation of both the Americans with Disabilities Act of 1990 ("ADA") and the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), (iv) religious discrimination in violation of Title VII, (v) discrimination based on his national origin in violation of Title VII, (vi) breach of contract, and (vii) wrongful discharge in violation of public policy—i.e., a *Burk* tort.[4]

### III. Discussion and analysis

To determine whether Plaintiff's Amended Complaint should be dismissed, as well as to determine whether Plaintiff should be granted leave to file his proposed Second Amended Complaint, the Court evaluates the causes of action asserted therein individually to determine whether such claims are subject to dismissal.

#### A. Plaintiff's ADEA age discrimination claim

Plaintiff asserts what he describes as a "reverse age discrimination" claim based in the ADEA. Second Am. Compl. ¶ 17, Doc. No. 24-1. Plaintiff, who was at the time of his

---

[4] *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989).

termination (and is now) under the age of 40, cannot assert a discrimination claim based in the ADEA. *See* 29 U.S.C. § 631(a) ("The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age."). That is, no "reverse age discrimination" claim exists in federal discrimination law. As stated by the U.S. Supreme Court fifteen years ago, "the text, structure, and history point to the ADEA as a remedy for unfair preference based on relative youth, leaving complaints of the relatively young outside the statutory concern." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 593 (2004). Accordingly, Plaintiff's age discrimination claim is subject to dismissal, and granting Plaintiff leave to assert such a claim in an amended pleading would be futile.

    **B.**    **Plaintiff's USERRA and ADA disability discrimination claim**

Plaintiff bases his disability discrimination claim in two laws—the USERRA and the ADA—which the Court addresses in turn. First, to the extent Plaintiff claims he was discriminated against in violation of the USERRA, his claim fails as a matter of law. "To survive a motion to dismiss, [a plaintiff alleging a USERRA claim] must have alleged . . . that [his] own military service . . . was a motivating factor that caused [the employer] to [take the adverse employment action]. *Norris v. Glassdoor, Inc.*, No. 2:17-cv-791, 2018 WL 3417111, at *5 (S.D. Ohio July 13, 2018). Here, Plaintiff has not alleged that Defendant took an adverse employment action based on his military service; rather, he alleges that he was discriminated against due to the disability he suffered during his military service. *See* Second Am. Compl. ¶ 20, Doc. No. 24-1. Such alleged discrimination is not within the scope of USERRA's protections. *See* 38 U.S.C. § 4311(a) (indicating that USERRA protections extend to "[a] person who is a member of, applies to

7

be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service . . . *on the basis of* that membership, application for membership, performance of service, application for service, or obligation" (emphasis added)). "[T]he fact that [a plaintiff's] alleged disability began during his military service does not in itself implicate USERRA absent additional facts" not pleaded by Plaintiff. *Wolfgram v. G4S Secure Sols. (USA), Inc.*, No. 1:18cv198, 2018 WL 5016337, at *3 (N.D. Ind. Oct. 15, 2018); *accord Carroll v. Del. River Port Auth.*, 89 F. Supp. 3d 628, 633 (D.N.J. 2015).

Nor has Plaintiff pleaded facts from which a connection between the motivating factors for his termination and his military service could be inferred. The Sixth Circuit has recognized the potential for such an inference based on:

> [P]roximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility toward members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 518 (6th Cir. 2009) (per curiam) (quotation marks and citation omitted).[5] Here, Plaintiff has not pleaded (i) any temporal proximity between his military service and his termination, (ii) that Defendant's stated reason for the termination was pretext for hostility against veterans or military members, (iii) that Defendant was generally hostile toward veterans or service members, or (iv) that non-

---

[5] The Tenth Circuit does not appear to have addressed the issue addressed in *Hance* by the Sixth Circuit.

veterans were treated differently than veterans. Rather, Plaintiff's claim is based on his disability, not his military service, and "[w]here a veteran argues that something other than his . . . military status was the actual substantial or motivating factor for an adverse employment action, a USERRA claim does not lie." *Norris*, 2018 WL 3417111, at *6 (quotation marks and citation omitted).[6]

Second, regarding Plaintiff's disability discrimination claim to the extent it is based in the ADA, Defendant has not argued that such a claim is unexhausted, and the Court does not find that alleging such a claim in an amended pleading would be futile. Defendant argues that leave to amend should be denied to Plaintiff as to his entire proposed Second Amended Complaint based on Plaintiff's undue delay, bad faith, dilatory motive, and repeated failure to cure deficiencies present in his earlier pleadings, and the prejudice that allowing this lawsuit to continue will cause Defendant. Certainly, the Court does not condone Plaintiff's repeated inclusion of some claims for which no apparent legal basis exists, or Plaintiff's choice to ignore Defendant's dismissal motion and instead—more than three months later—file a conclusory amendment motion. Still, the Court is cognizant of the Tenth Circuit's instructions to "give leave to amend freely when justice so requires" and that "Rule 15(a)'s purpose is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Warnick v. Cooley*, 895 F.3d 746, 754-55 (10th Cir. 2018) (quotation marks and citations omitted). Allowing

---

[6] Because the Court finds that Plaintiff has not stated a USERRA claim, the Court does not reach the issue of whether Plaintiff was required to plead facts regarding exhaustion of administrative remedies for his USERRA claim. *See* Def.'s Mot. 10, Doc. No. 14.

Plaintiff's ADA-based discrimination claim to proceed will not be inequitable or unduly prejudicial to Defendant; indeed, in Defendant's dismissal motion, it conceded that Plaintiff's ADA discrimination should proceed beyond the pleading stage. *See* Def.'s Mot. 20, Doc. No. 14; *see also* Def.'s Resp. 12 n.23, Doc. No. 25. Had Plaintiff chosen not to seek leave to amend—meaning the Court would be ruling only on Defendant's dismissal motion, not on Plaintiff's amendment motion as well—the result would be the same as the Court reaches now: two of Plaintiff's claims proceed, and the remainder are dismissed. Accordingly, the Court finds that Plaintiff's ADA disability discrimination claim is not subject to dismissal, and Plaintiff should be granted leave to assert such a claim in an amended pleading.

    **C.**    **Plaintiff's Title VII gender discrimination and national origin discrimination claims**

Plaintiff's gender discrimination and national original discrimination claims are based in Title VII. Defendant argues that these claims fail both because of the Court's lack of subject-matter jurisdiction under Rule 12(b)(1) and because Plaintiff has failed to state a claim upon which relief may be granted under Rule 12(b)(6). Plaintiff's subject-matter jurisdiction argument is based on Defendant's assertion that Plaintiff did not administratively exhaust these claims. While exhaustion as a requirement for subject-matter jurisidction was the law of this circuit at one time, it no longer is. *See Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1163-64 (10th Cir. 2018); *Lincoln v. BNSF Ry.*

*Co.*, 900 F.3d 1166, 1184-86 (10th Cir. 2018).[7]  Now, "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar the federal court from assuming jurisdiction over a claim." *Lincoln*, 900 F.3d at 1185.  Still, when a defendant argues that a claim is subject to dismissal due to the lack of exhaustion of administrative remedies under both Rule 12(b)(1) and Rule 12(b)(6) (as here), the Court may address exhaustion at the motion-to-dismiss stage when the grounds for the affirmative defense are apparent from the face of the complaint.  *See Cirocco v. McMahon*, --- F. App'x ---, No. 18-1096, 2019 WL 1594778, at *2-3 (10th Cir. Apr. 15, 2019) (unpublished); *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1169-70 (10th Cir. 2018).

Plaintiff's failure to exhaust his administrative remedies is facially apparent from his proposed Second Amended Complaint and from his Amended Complaint, based on their comparison to Plaintiff's incorporated-by-reference EEOC charge.  *See supra* note 3.  As recently explained by the Tenth Circuit:

> [A]fter a plaintiff receives a notice of [his] right to sue from the EEOC, that plaintiff's claim[s] in court [are] generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.  While [the Court will] liberally construe the plaintiff's allegations in the EEOC charge, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim.  The ultimate question is whether the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge.

---

[7] *Lincoln* was issued after Defendant filed its dismissal motion [Doc. No. 14], but before it filed its response brief to Plaintiff's amendment motion [Doc. No. 25].

*Smith*, 904 F.3d at 1164-65 (quotation marks and citations omitted). That is, "[a] party may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances." *Schroder v. Runyon*, 1 F. Supp. 2d 1272, 1274 (D. Kan. 1998) (quotation marks and citation omitted). Reviewing Plaintiff's EEOC charge—and construing it liberally—the Court finds it to contain nothing referencing either (i) Plaintiff's gender or his national origin or (ii) discrimination due to either characteristic. Nor did Plaintiff check the boxes on the form for discrimination based on "sex" or "national origin." Charge of Discrimination, Doc. No. 14-1 (capitalization omitted). Plaintiff's EEOC charge does not even identify what his gender and national origin are. Thus, there is no reasonable basis by which an investigation into the complaints included in Plaintiff's EEOC charge would have included gender and national origin discrimination. *See DiProjetto v. Morris Protective Serv.*, 306 F. App'x 687, 688 (2d Cir. 2009) (unpublished); *Pervez v. Home Depot, U.S.A., Inc.*, No. 07-cv-1116-LTB-KMT, 2008 WL 115548, at *4 (D. Colo. Jan. 10, 2008); *Schroder*, 1 F. Supp. 2d at 1274-75.

Accordingly, Plaintiff has not exhausted his administrative remedies as to these claims, they are subject to dismissal, and granting Plaintiff leave to assert such claims in an amended pleading would be futile. The dismissals of these claims will be without prejudice. *See Smith*, 904 F.3d at 1166.

### D. Plaintiff's Title VII religious discrimination claim

For the same reasons expressed as to Plaintiff's disability discrimination claim to the extent such claim is based in the ADA, not the USERRA, the Court decides that amendment of Plaintiff's complaint to restate his religious discrimination claim is not futile

12

and should be allowed. *See supra* Part III.B. As with Plaintiff's ADEA-based disability discrimination claim, Defendant did not seek dismissal of this claim in its dismissal motion.

E. **Plaintiff's breach of contract claim**

Plaintiff alleges that oral representations constituting a "contract, a constructive contract, or a quasi contract" were made to Plaintiff regarding the continuation and terms of his employment by Defendant at the time he was hired. Second Am. Compl. ¶ 30, Doc. No. 24-1. Plaintiff then alleges that Defendant breached the contract "by demoting [him], creating a hostile work environment, firing Plaintiff for refusing to work on the Sabbath Sunday, for attending necessary follow up medical and Veteran's Administration services, for reporting violations of legal reporting requirements and otherwise destroying and injuring Plaintiff's right to receive the fruits of th[e] contract." *Id.* ¶ 31.

In Oklahoma, "[w]here an employee has no written contract, and employment is for an indefinite term, it is terminable at will by either party at any time with or without cause." *Corder v. Okla. Med. Research Found.*, 1999 OK CIV APP 33, ¶ 6, 980 P.2d 1122, 1124. In addition, the applicable statute of frauds states:

> The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, by an agent of the party or by a broker of the party . . . :
> 1. An agreement that, by its terms, is not to be performed within a year from the making thereof . . . .

Okla. Stat. tit. 15, § 136. All of the contract terms alleged to exist and be at issue by Plaintiff are of indefinite terms and, as such, their enforceability is precluded by the statute

of frauds. *See Corder*, ¶¶ 21-22, 980 P.2d at 1127.[8] The Court agrees with the reasoning of the Oklahoma Court of Civil Appeals in *Corder* which recognized as persuasive, among other factors in determining applicability of the statute of frauds, that the former employee's employment had already lasted more than a year at the time of his termination. So here, too. *See* Second Am. Compl. ¶¶ 5, 7, Doc. No. 24-1.

Thus, Plaintiff's alleged oral contact is not enforceable because it violates Oklahoma' statute of frauds. Plaintiff's contract claim is subject to dismissal and granting Plaintiff leave to assert this claim in an amended pleading would be futile. The Court does not reach Defendant's alternative arguments for dismissal of this claim. *See* Def.'s Mot. 15-16, Doc. No. 14.

### F. Plaintiff's *Burk*-tort claim

Finally at issue is Plaintiff's *Burk*-tort claim. Recognition of the *Burk* tort is an exception to Oklahoma's employment-at-will doctrine, and the cause of action "subjects the employer to tort liability where the employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act

---

[8] "Federal courts are obliged to follow the rulings of the state's highest court, but [they] are not bound by intermediate appellate decisions to the extent that federal courts are bound to determine state law as it believes the state high court would. Intermediate court decisions have been regarded by the Tenth Circuit as indicia of the leanings of the state's highest court and [federal courts] have followed suit unless other authority convinces [the federal court] that the state supreme court would decide otherwise." *Truesdell v. State Farm Fire & Cas. Co.*, 960 F. Supp. 1511, 1515 (N.D. Okla. 1997) (quotation marks and citations omitted). Here, the Court has not been presented any authority indicating that the Oklahoma Supreme Court would decide differently than the Court of Civil Appeals decided *Corder*, and the Court's independent research reveals no such authority undercutting *Corder*.

14

consistent with a clear and compelling public policy." *Southon v. Okla. Tire Recyclers, LLC*, 2019 OK 37, ¶ 14, --- P.3d ---, No. 116,888, 2019 WL 2182912, at *5 (quotation marks and citation omitted). For the claim to survive as a matter of law, the termination must be "contrary to a clear mandate of public policy and violate[] some law articulated in state constitutional, statutory or decisional sources." *Darrow v. Integris Health, Inc.*, 2008 OK 1, ¶ 9, 176 P.3d 1204, 1210. *Burk* torts "appl[y] only to a narrow class of cases and must be tightly circumscribed." *Id.*

Here, Plaintiff does not identify any specific public policy which his termination was contrary to. Even if the Court accepts Plaintiff's assertion that he was "denied . . . the right to exercise his Veteran's Administration rights" as the public policy at issue, this policy is federal-law-based, not state-law-based. Second Am. Compl. ¶ 35, Doc. No. 24-1. It therefore cannot support a *Burk* tort. *See Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1280 n.7 (10th Cir. 2003). Plaintiff's remaining allegations regarding his *Burk*-tort claim are all conclusory and non-specific, and they do not meet the *Twombly*/*Iqbal* pleading standard. *See* Second Am. Compl. ¶¶ 34-35, Doc. No. 24-1; *Mazzanti v. City of Owasso*, No. 12-CV-22-GKF-PJC, 2012 WL 2505504, at *3 (N.D. Okla. June 28, 2012) ("[T]he total absence of factual allegations identifying a specific, well-established, clear and compelling state-declared public policy warrants dismissal of [a] *Burk* tort claim.").

All told, the Court finds that Plaintiff's *Burk*-tort claim is subject to dismissal and granting Plaintiff leave to assert this claim in the proposed amended pleading would be futile. Still, dismissal of this claim will be without prejudice.

**IV.     Sanctions of Plaintiff's counsel under Rule 11**

Defendant requests the Court impose sanctions on Plaintiff for, inter alia, "inclusion of such a patently frivolous ADEA claim in the [proposed] Second Amended [Complaint]." Def.'s Resp. 8, Doc. No. 25. Defendant purports to seek sanctions pursuant to Rule 11(b), but it does not indicate that it complied with Rule 11(c)(2). Accordingly, the Court will not impose sanctions under Rule 11(c)(2), and Defendant's request for the same is denied. *See Mellott v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 888 (10th Cir. 2012) (unpublished).

The Court may, however, proceed under Rule 11(c)(3), and it does so in this case. Plaintiff's counsel is therefore instructed to show cause via written filing within 14 days of this order why sanctions should not be imposed against him for violation of Rule 11(b)(2) as to the proposed ADEA age discrimination claim and for violation of Rules 11(b)(2) and 11(b)(3) as to the proposed (unexhausted) Title VII gender discrimination and national origin discrimination claims.

**V.      Conclusion**

IT IS THEREFORE ORDERED that Defendant's Second Partial Motion to Dismiss [Doc. No. 14] is GRANTED for the reasons set forth herein. Plaintiff's (i) gender discrimination, (ii) national origin discrimination, and (iii) wrongful discharge in violation of public policy claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's (iv) age discrimination and (v) breach of contract claims, as well as his (vi) disability discrimination claim to the extent it is based in the USERRA (and not the ADA), are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's Opposed Motion for Leave to Amend Second Amended Petition [Doc. No. 24] is GRANTED IN PART and DENIED IN PART. Plaintiff may file his Second Amended Complaint in accordance with Local Civil Rule 15.1, *except* Plaintiff shall not include therein the causes of action for which the Court has found herein that granting leave to amend would be futile.

IT IS FURTHER ORDERED that Plaintiff's counsel shall show cause via written filing—within 14 days of this order—why sanctions should not be imposed pursuant to Rules 11(b)(2), 11(b)(3), and 11(c)(3).

IT IS SO ORDERED this 16th day of July, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE